McClendon, J.
This appeal arises from an action to quiet title on certain immovable property brought by a tax sale purchaser who acquired a tax sale certificate on the property. The trial court ruled in favor of the plaintiff. For the reasons that follow, we affirm the trial court's judgment. We deny the relief requested by the plaintiff in its answer to the defendant's appeal.
FACTS AND PROCEDURAL HISTORY
This matter originally came before the court in 2016 on appeal filed by the defendant, Zenobia A. White. See Alpha Capital US Bank d/b/a Alpha Capital v. Zenobia A. White, 16-0261 (La.App. 1 Cir. 10/31/16), (unpublished) 2016 WL 6427738. However, because the trial court had not ruled on Ms. White's motion for new trial, the appeal was premature, and the case was remanded to the trial court. The motion for new trial was subsequently denied, and Ms. White filed the instant suspensive appeal challenging the trial court's judgment granting Alpha Capital US Bank d/b/a Alpha Capital's motion for summary judgment, dismissing her petition to annul, quieting Alpha Capital's tax title, and recognizing Alpha Capital as owner of the subject property.
As set forth in this court's prior opinion, the subject property is located at 3250 Lone Oak Drive in East Baton Rouge Parish and was purchased by Ms. White in 2000. Ms. White failed to pay the ad valorem taxes due on the property in 2010. In April 2011, the Parish of East Baton Rouge sent notice of the delinquent taxes to Ms. White by certified mail to 1375 Francis Harriet Drive, Ms. White's previous address. The notice was returned as "Unclaimed Unable to Forward."
As a result of the tax delinquency, a tax sale was conducted by the Sheriff and Tax Collector for East Baton Rouge Parish on June 6, 2011. Alpha Capital purchased the tax sale certificate. On June 30, 2011, Alpha Capital's tax sale certificate was recorded in the East Baton Rouge Parish conveyance records; the certificate specifically states that the tax debtor or any interested person has three years from the date of recordation to redeem the subject property. Thereafter, on October 2, 2013, Alpha Capital sent a Legal Notice of Right to Redeem Tax Sale by regular and certified mail to Ms. White at both the 1375 Francis Harriet Drive address and the 3250 Lone Oak Drive address. The certified letter sent to Ms. White at 3250 Lone Oak Drive was received and signed for on Ms. White's behalf. Ms. White did not redeem the tax sale certificate, and the redemption period lapsed on June 30, 2014.
On October 6, 2014, Alpha Capital filed suit to quiet title. Ms. White responded by filing, in proper person, a petition to annul *1127 tax sale on November 20, 2014.[1] On December 17, 2014, Alpha Capital filed its answer and affirmative defenses to the nullity suit. Alpha Capital filed a motion for summary judgment on June 3, 2015, seeking to dismiss Ms. White's petition to annul the tax sale and requesting judgment quieting the tax title of the subject property and recognizing it as owner of the subject property. The exhibits Alpha Capital attached to its motion for summary judgment included a certified copy of the tax sale certificate; the envelope sent by East Baton Rouge Parish in April 2011 that was returned as undeliverable; the affidavit of the title abstractor for Alpha Capital regarding the mailing of the legal notice to Ms. White of her right to redeem the tax sale at the 3250 Lone Oak Drive address; the mailed legal notice to the same address; the signed return receipt of the legal notice; and the returned unclaimed envelope that Alpha Capital sent to Ms. White at the 1375 Frances Harriet Drive address in October 2013.[2] Ms. White did not file an opposition to the motion. Following a hearing on December 14, 2015, at which Ms. White was present but unrepresented, the trial court granted Alpha Capital's motion for summary judgment. The trial court signed a judgment that date, confirming and quieting Alpha Capital's tax title.
SUMMARY JUDGMENT LAW
Alpha Capital's motion for summary judgment was filed in June 2015. Under the law in effect at the time, as well as the current version of LSA-C.C.P. art. 966, appellate courts review motions for summary judgment de novo, using the same criteria that govern the trial court's determination of whether the motion should be granted.[3] See LSA-C.C.P. art. 966 (prior to 2015 La. Acts, No. 422 § 1, eff. Jan. 1, 2016). Thus, the appellate court asks the same questions as the trial court, i.e. whether there is any genuine issue of material fact and whether the mover is entitled to judgment as a matter of law. See Barrilleaux v. Bd. of Sup'rs of Louisiana State Univ., 14-1173 (La.App. 1 Cir. 4/24/15), 170 So.3d 1015, 1019, writ denied sub nom. Barrilleaux v. Bd. of Sup'rs of Louisiana State Univ. & Agr. & Mech. Coll., 15-1019 (La. 9/11/15), 176 So.3d 1048.
Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, admissions, together with the affidavits, if any, admitted for purposes of the motion for summary judgment, show there is no genuine issue as to material fact and that the movant is entitled to judgment as a matter of law. LSA-C.C.P. art. 966B(2); Tomaso v. Home Depot, U.S.A., Inc., 14-1467 (La.App. 1 Cir. 6/5/15), 174 So.3d 679, 681. The summary judgment procedure is favored and "is designed to secure the just, speedy, and inexpensive determination of every action." LSA-C.C.P. art. 966A(2). The purpose of the procedure is to pierce the pleadings and to assess the proof in order to see *1128 whether there is a genuine need for trial. Hines v. Garrett, 04-0806 (La. 6/25/04), 876 So.2d 764, 769 (per curiam). The interpretation of a statute is a question of law that may be decided by summary judgment. See Louisiana Workers' Comp. Corp. v. Landry, 11-1973 (La.App. 1 Cir. 5/2/12), 92 So.3d 1018, 1021, writ denied, 2012-1179 (La. 9/14/12), 99 So.3d 34.
The mover bears the burden of proving he is entitled to summary judgment. LSA-C.C.P. art. 966C(2). If the mover will bear the burden of proof at trial, that party must support his motion with credible evidence that would entitle him to a directed verdict if not controverted at trial. Hines, 876 So.2d at 766. Such an affirmative showing will then shift the burden of production to the party opposing the motion, requiring the opposing party to produce evidentiary materials that demonstrate the existence of a genuine issue for trial or to submit an affidavit requesting additional time for discovery. Id.
DISCUSSION
Ms. White maintains that her due process rights were violated because she did not receive notice of the delinquent taxes and notice of the tax sale prior to the issuance of the tax certificate concerning her property. It is undisputed that the East Baton Rouge Parish tax collector sent notice of the tax delinquency and of the tax sale to Ms. White's previous address, not the address of the subject property. The notice was returned as unclaimed, and no additional notices were sent prior to the tax sale. Ms. White contends that, without proper pre-sale notice, the tax sale was an absolute nullity, and the trial court erred in granting summary judgment. In contrast, Alpha Capital insists that the timely post-sale notice received by Ms. White, which advised her of her redemption rights, satisfied the requirements of due process pursuant to current law. Alpha Capital argues that this notice gave Ms. White ample time to redeem the tax sale certificate and retain her property. Ms. White does not dispute that she received the notice mailed to her by Alpha Capital within the redemptive period. Alpha Capital alleges that Ms. White failed to take action to redeem the property within the redemptive period; therefore, she may not pursue a redemption nullity as a matter of law.
By means of 2008 La. Acts, No. 819, effective January 1, 2009, the Louisiana Legislature comprehensively amended, restated, and organized the law governing the payment and collection of property taxes, tax sales, and adjudicated property. Act 819 enacted a new Chapter 5 of Subtitle III of Title 47 of the Louisiana Revised Statutes of 1950.[4] Some of the stated purposes of Act 819, also known as the 2008 revision, were to encourage the payment and efficient collection of property taxes, to provide a fair process for the redemption of tax sale property, and to encourage the return of such properties to commerce "through clear procedures that allow interested persons to carry out the title search and notification procedures considered necessary under contemporary standards of due process to acquire merchantable title to those properties." LSA-R.S. 47:2121A.
Article VII, § 25(A)(1) of the Louisiana Constitution provides that a tax deed by a tax collector shall be prima facie evidence that a valid sale was made. Additionally, LSA-R.S. 47:2155B provides that "[a] certified *1129 copy of the tax sale certificate is prima facie evidence of the regularity of all matters regarding the tax sale and the validity of the tax sale." Relying on these provisions, Alpha Capital asserts that the tax sale certificate submitted in connection with the motion for summary judgment was prima facie evidence of the validity of the tax sale. Therefore, according to Alpha Capital, the burden shifted to Ms. White to show why the tax sale was not valid.
Alpha Capital also insists that the legal notice of the right to redeem sent to Ms. White was sufficient due process notice under LSA-R.S. 47:2156A. It is undisputed that notice was sent to and received by Ms. White with more than six months remaining in the redemption period. After recordation of the tax sale, a tax debtor has three years to redeem the property. See La. Const. Art. VII, § 25 (B).
Prior to the 2008 revision to Title 47, Louisiana law was well-settled that a property owner must be given pre-sale notice reasonably calculated to apprise him of a pending tax sale. Absent such notice, the sale violated due process and was an absolute nullity. See Lewis v. Succession of Johnson, 05-1192 (La. 4/4/06), 925 So.2d 1172 ; see also Mennonite Board of Missions v. Adams, 462 U.S. 791, 800, 103 S.Ct. 2706, 2712, 77 L.Ed.2d 180 (1983). Since the revision, however, it is clear that tax sales may no longer be attacked as absolute nullities. Instead, there are three statutorily enumerated challenges which, if proven, will nullify a tax sale certificate - a payment nullity, a redemption nullity, or a nullity under LSA-R.S. 47:2162.[5] See LSA-R.S. 47:2286. All are relative nullities capable of being cured. See LSA-R.S. 47:2286. See also Central Properties v. Fairway Gardenhomes, LLC, 16-1855 (La. 6/27/17), 225 So.3d 441, 449.[6] A redemption nullity is the only applicable grounds for nullity which may be available to Ms. White.
A redemption nullity is defined in LSA-R.S. 47:2122(10) as "the right of a person to annul a tax sale in accordance with R.S. 47:2286 because he was not duly notified at least six months before the termination of the redemptive period." LSA-R.S. 47:2122(4) provides:
(4) "Duly notified" means, with respect to a particular person, that an effort meeting the requirements of due process of law has been made to identify and to provide that person with a notice that meets the requirements of R.S. 47:2156, *1130 2157, 2206, 2236, or 2275, or with service of a petition and citation in accordance with R.S. 47:2266, regardless of any of the following:
(a) Whether the effort resulted in actual notice to the person.
(b) Whether the one who made the effort was a public official or a private party.
(c) When, after the tax sale, the effort was made.[7]
One of the goals of the 2008 revision was to create a procedure wherein a tax sale purchaser could safeguard its purchase from nullity by sending post-sale notice of its right to redeem to interested parties at least six months before the expiration of the redemption period. See Central Properties, 225 So.3d at 450-51, citing Adair Asset Management, LLC v. Turney, 50, 574 (La.App. 2 Cir. 5/4/16), 195 So.3d 501, 512-13, writ denied, 2016-01347 (La. 11/7/16), 209 So.3d 97. The new post-sale notice procedure essentially allows a tax sale purchaser to engage in "self-help" by allowing it to send a post-sale notice to interested persons to cure any pre-sale procedural deficiencies which occurred prior to its involvement but which may substantially affect its ability to perfect title to the tax sale property.
Louisiana Revised Statute 47:2156 provides the procedure for post-sale notice of the right to redeem. Subsection A provides:
Within the applicable redemptive period, the tax sale purchaser may send a written notice to any or all tax sale parties notifying the parties of the sale. The notice shall provide full and accurate information necessary to contact the tax sale purchaser, including the name, physical address, and telephone number of the purchaser. It shall be accompanied by a copy of the tax sale certificate received by the tax sale purchaser under the provisions of this Part and copies of the documents that the purchaser received with that sale. The notice shall inform the tax sale parties that the failure to redeem the property prior to the expiration of the applicable redemptive period will terminate the right to redeem the property, and the purchaser will have the right to seek confirmation of the tax title and take actual possession of the property. The notice shall be sufficient if it is in the form set forth in Subsection B of this Section.
"[T]he important notice is a notice of the right to redeem." Official Comments to LSA-R.S. 47:2286, comment (b).
The post-sale notice procedure protects the tax debtor's due process rights even if the tax collector failed to provide pre-sale notice because, under the new statutory scheme, ownership of the property is not conveyed at the tax sale. The tax collector no longer auctions the real estate; instead, he auctions a tax sale title, which neither transfers nor terminates the property interest of any person in the property.[8]
*1131 Central Properties, 225 So.3d at 448 ; see also LSA-R.S. 47:2121B and C. Ownership of the tax sale property is not transferred until the tax debtor has been duly notified and both the redemptive period and any right held by that person to assert a redemption nullity has terminated. LSA-R.S. 47:2121B. The term "tax sale" now denotes that it is the tax lien that is purchased in the form of a tax sale title, albeit with future rights of ownership after due notice to all "tax sale parties" and the expiration of the redemptive period, as well as the filing of a suit to quiet title. Central Properties, 225 So.3d at 449.
The Louisiana Supreme Court analyzed this new statutory scheme in Central Properties, 225 So.3d 441, and held that the post-sale notice requirements set forth in LSA-R.S. 47:2156 and due process are satisfied when notice is provided by the tax sale purchaser, i.e. a private party, even though the tax collector fails to provide post-sale notice.[9] Although the issue presented in this appeal concerning the necessity of providing pre-sale notice was not squarely addressed in Central Properties, the supreme court favorably cited and discussed Adair Asset Management, 195 So.3d 501 in Central Properties. We arrive at the same conclusion reached by our colleagues on the Second Circuit. In Adair, the Second Circuit concluded that, under the new statutory scheme governing tax sales, the failure to give pre-sale notice to any tax notice party does not render the tax sale absolutely null. Adair Asset Management , 195 So.3d at 511-12. Instead, any deficiency in pre-sale notice sent by the tax collector is cured by post-sale redemption notice sent by the tax sale purchaser.[10] Id.
The record in this matter shows that Alpha Capital mailed the redemption notice to Ms. White in the form specified by LSA-R.S. 47:2156B(3) more than six months prior to the expiration of the redemption period. Thus, in accordance with the 2008 revision, Ms. White received sufficient notice and was duly notified. The post-sale notice provided to Ms. White satisfied the requirements of due process. Ms. White presented no contradictory evidence and did not meet her burden to establish a redemption nullity under these facts. Further, to the extent that Ms. White's argument regarding pre-sale notice may be construed as a constitutional due process challenge to the 2008 revision, this issue was neither pleaded nor argued in the lower court and cannot be raised for the first time on appeal. See State v. Hatton, 07-2377 (La. 7/1/08), 985 So.2d 709, 719 ; Mosing v. Domas, 02-0012 (La. 10/15/02), 830 So.2d 967, 975. The trial court correctly granted summary judgment.
ALPHA CAPITAL'S ANSWER TO MS. WHITE'S APPEAL
Alpha Capital answered Ms. White's appeal, asking this court to convert her suspensive *1132 appeal to a devolutive appeal due to Ms. White's failure to timely post an appeal bond in accordance with LSA-C.C.P. art. 2123.
In a suspensive appeal, the appellant must file a petition for appeal and furnish the security within the delay allowed in LSA-C.C.P. art. 2123. The clerk of court mailed notice of the judgment denying Ms. White's motion for new trial on March 14, 2018. Therefore, Ms. White was required to take a suspensive appeal and furnish the required security within thirty days, by April 13, 2018. Ms. White timely filed a motion and order for suspensive appeal on March 27, 2018. The trial court set the bond amount on April 2, 2018; however, it appears the bond was not paid until June 13, 2018.
If the appellant fails to timely furnish security, the suspensive appeal remains valid, but the right vests in the appellee to obtain dismissal of the suspensive appeal and to secure the right to execute on the judgment. See Clement v. Graves, 04-1831 (La. App. 1 Cir. 9/28/05), 924 So.2d 196, 200 ; Wright v. Jefferson Roofing, Inc., 93-1217 (La. 1/14/94), 630 So.2d 773, 775-76. The appellant's tardiness in furnishing security constitutes an irregularity or defect imputable to the appellant which may form a basis for the appellee to move for dismissal of the suspensive appeal under LSA-C.C.P. art. 2161. Clement, 924 So.2d at 200.
Louisiana Code Civil Procedure Article 2161 requires that an objection to an irregularity must be filed within three days, exclusive of holidays, of the return day or the date on which the record is lodged in the appellate court, whichever is later. See Wright, 630 So.2d at 775-76 ; Clement, 924 So.2d at 200. If the appellee fails to lodge his objection within the three days provided by Article 2161, the appeal retains its status as a suspensive appeal, provided that a bond is eventually paid. See Wright, 630 So.2d at 775-76 ("when the appellant files a suspensive appeal or the security after the thirty-day period provided in La.Code Civ.Proc. art. 2123 for appealing suspensively (but within the sixty-day period for appealing devolutively) and the appellee does not exercise his right to dismiss the suspensive appeal within the three-day period provided in La.Code Civ.Proc. art. 2161, the suspensive appeal remains in effect...")
The return date was set for June 9, 2018, and the record was lodged with this court on June 19, 2018. However, Alpha Capital did not file an objection until July 3, 2018, well outside the three-day window for complaining of an irregularity pursuant to LSA-C.C.P. art. 2161. Alpha Capital's request is untimely and is, therefore, denied.
CONCLUSION
For the foregoing reasons, we deny the relief requested in the plaintiffs answer to this appeal and affirm the December 14, 2015 judgment of the trial court. Costs of this appeal are assessed to the appellant, Zenobia A. White.
JUDGMENT AFFIRMED. ANSWER TO APPEAL DENIED.

The petition to annul was filed in the same proceeding as the petition to quiet title.

Although we recognize that some of Alpha Capital's exhibits do not fall within the exclusive list of exhibits which may be relied upon to support or oppose a motion for summary judgment per LSA-C.C.P. art. 966B(2), Ms. White did not object to the exhibits, and they are deemed admitted. See LSA-C.C.P. art. 966F(2) (prior to 2015 La. Acts, No. 422 § 1, eff. Jan. 1, 2016). Furthermore, the facts which Alpha Capital seeks to establish through these exhibits are undisputed by Ms. White, and the motion before the court raises a question of law which is properly decided on summary judgment.

The provisions of Act 422 do "not apply to any motion for summary judgment pending adjudication or appeal on [January 1, 2016]." See Editors' Notes, Section 2, to Acts 2015, No. 422.

Since the 2008 revision, the law has been amended several times, most significantly by 2012 La. Acts, No. 836, which was effective August 1, 2012. Because the tax sale at issue took place on June 6, 2011, we focus on the language of the statutes that were in effect at the time of the tax sale.

LSA-R.S. 47:2162 prohibits the tax collector or assessor whose duties are to assess or collect ad valorem taxes for the political subdivision from buying, either directly or indirectly, any property or tax sale title sold or offered for sale for ad valorem taxes imposed by that political subdivision.

Although the Official Revision Comments connected with statutes are not the law, they can be useful in determining legislative intent. Central Properties, 225 So.3d at 448. The Official Comments to LSA-R.S. 47:2286 provide:
(a) This section is new. It modifies the law in part.
(b) In keeping with the emphasis of the revision, the important notice is a notice of the right to redeem. Therefore, the only reason a tax sale can be set aside or declared a nullity is for a redemption nullity, a payment nullity, or a sale to a prohibited person under R.S. 47:2162. A tax sale can no longer be set aside for minor procedural violations in noticing the tax sale and in the conduct of the tax sale, etc.
(c) This Section makes clear that all of these nullities are relative nullities since the nullities can be cured. A claim of a redemption nullity can be cured by the giving of notice and the passage of time under this Chapter. A claim of a payment nullity can be cured by acquisitive prescription. A violation of R.S. 47:2162 is cured by a sale to a good faith purchaser. An action for nullity under this Chapter is also subject to liberative prescription. See 47:2287. The action may be brought only by a tax sale party whose interest in the property has been adversely affected.

The Comments to LSA-R.S. 47:2156B explain:
To the extent a person is duly notified by the sending of the notice under Subsection B and the property is not redeemed before the expiration of the redemptive period, the person does not have a cause of action for a redemption nullity after the expiration of the redemptive period.

The Comments to LSA-R.S. 47:2155 further clarify the change and provide, in part:
(a) This Section modifies former R.S. 47:2183(A). In following the purpose of the revision to this Chapter, a safe harbor form tax sale certificate is provided.
(b) The old concept of tax deed is replaced with the concept of tax sale certificate, defined in R.S. 47:2122. A tax sale certificate transfers tax sale title only. The tax sale certificate, however, constitutes a tax deed for purposes of the Louisiana Constitution.

Louisiana Revised Statute 47:2156B requires the tax collector to send written notice via U.S. mail, postage prepaid, to each tax notice party and each tax sale party whose interest would be shown on a thirty-year mortgage certificate in the name of the tax debtor and whose interest was filed prior to the filing of the sale that tax title to the property has been sold at tax sale. Notices must be sent until the end of the applicable redemption period; the statute further establishes the timing of such notices.

Ms. White relies on Surcouf v. Darling, 15-0278 (La.App. 4 Cir. 10/21/15), 177 So.3d 1085 to support her argument that post-sale notice does not cure constitutionally defective pre-sale notice. However, Surcouf did not involve post-sale notice provided in accordance with LSA-R.S. 47:2156 and is, therefore, distinguishable from the present case. Furthermore, to the extent Surcouf holds that, following the 2008 revision, pre-sale notice must be given to satisfy due process, this holding was tacitly rejected by the supreme court in Central Properties .